Ronnie Hubert BUCKNER *v.* Donna Gale BUCKNER

CA 84-323                                                    689 S.W.2d 584

Court of Appeals of Arkansas
En Banc
Opinion delivered May 22, 1985

*Guy H. "Mutt" Jones, Sr., Phil Stratton* and *Casey Jones*, by: *Phil Stratton*, for appellant.

*Helen Rice Grinder*, for appellee.

TOM GLAZE, Judge. Appellant appeals the trial court's decision finding him in arrears in his child support payments in the sum of $13,869.00. He contends the chancellor erred in refusing him credit for certain cash payments made directly to appellee and for failing to remit child support payments that accumulated during a six-month period that he had physical custody of the parties' two children. We affirm.

Appellant claims that he had made cash contributions to appellee, totalling $12,401.82, and that amount should be deducted from his child support arrearage, which undisputedly is $13,869.00. The parties were divorced in 1977, and appellant was ordered to pay $100.50 per week child support through the court's registry. Since 1977, appellant has been found in contempt of court and in arrears for nonpayment of child support on three occasions, including this present action from which he appeals. The court's registry reflects that appellant was last current in his child support payments on November 24, 1981, and that he has made no payments since that date.[1] Appellant claims that after November 24, 1981, he and appellee discussed remarriage, and

---

[1] The testimony and other evidence conflict on when appellant actually paid the balance found due as of November 24, 1981.

while appellee denies it, appellant says they lived together until June, 1982, when they had a fight. Appellant testified that during the period they lived together, he gave appellee several cashier checks amounting to $3,076.00 and a bank money order in the sum of $3,886.02. In addition, he claims that he paid $2,000.00 towards the purchase of a house and that he made a number of mortgage payments on it. He said that he deeded the house to appellee upon her agreement he would pay no more child support. He also asserted he paid $645.00 on some newly-purchased furniture. Appellant testified to making other cash gifts to appellee and, in fact, indicated he gave her approximately $20,000.00 to $30,000.00 from December, 1981 to June, 1982.

Appellee denied receiving most of the cash gifts to which appellant testified, but she conceded he paid $2,000.00 on the house they purchased and $645.00 on the furniture. However, she testified that these purchases placed her in a worse financial situation because he did not assist with the monthly payments on either the house or furniture. Appellee said that much of the furniture was repossessed for nonpayment, and she had to rent the house because she could not maintain its mortgage payments. She denied that she agreed appellant would not have to make further child support payments when he deeded his interest in the house to her. Appellee further asserted that the $3,076.00 cashier check received from appellant was for the arrearage due in November, 1981, and that amount clearly should not be applied towards the reduction of his present arrears. Finally, she also stated that the $3,886.02 money order the appellant paid her in January, 1982, was not child support, and although the record is unclear on the point, she now argues those monies constituted the balance of the arrearages due on November 24, 1981.[2]

As can be gleaned from the foregoing, the evidence in this cause was conflicting. However, the law applicable to this matter is quite clear. Ordinarily, the chancery court has no power to remit accumulated court-ordered support payments. *Holley* v. *Holley*, 264 Ark. 35, 568 S.W.2d 487 (1978). In this State, entitlement to payment vests in the person entitled to it as the payments accrue as the equivalent of a debt due, and subject to

---

[2] Appellant never testified concerning the purpose for which the money order was made.

any disallowance for periods of time when the conduct of the custodial parent entitled to payment has defeated the rights of the other parent or otherwise justified disallowance, judgments should be rendered for the full amount of the arrearages, limited only by the five-year statute of limitations. *Id.* Here, the chancellor found no legal justification for the remittance of appellant's court-ordered support payments.

While appellant claims he was relieved from further child support payments because of an agreement with appellee, she denies such an agreement. She also denied that she lived with appellant as he alleged, and a friend of appellee's substantiated appellee's testimony on this point. Appellant obviously gave some monies to appellee that were not made in discharge of child-support arrearages. Concerning these monies, the chancellor said:

> I think he spent some of the money that you all have proven this afternoon. I think he spent it in an effort to get (appellee) to live with him again, which was his prerogative. God knows, I would have been happy if they'd gone back together. He spent that money on a house and those things that he did for her, but that's not child support, and that's not what he was ordered to do.

In sum, the trial court found what monies appellant did give appellee were voluntary expenditures, not child support, and we cannot say the court was clearly wrong in so finding. As was held in *Glover* v. *Glover*, 268 Ark. 506, 598 S.W.2d 736 (1980), we do not, as a matter of law, give credit for voluntary expenditures. Thus, in this respect, we find the chancellor's decision was correct. We also believe the chancellor correctly denied appellant's request for the remission of child support payments during the period he had the children while appellee was recuperating from surgery. In *Riegler* v. *Riegler*, 246 Ark. 434, 438 S.W.2d 468 (1969), the noncustodial parent made a similar request because his daughter lived with him for one year. The Supreme Court found such a circumstance did not give the chancery court power to remit accumulated payments which became vested in the custodial parent. It held further that a modifying decree can relate to the future only.

We believe the trial court's findings are not against the

preponderance of the evidence and its decision is consistent within well-settled law. Therefore, we affirm.

Affirmed.

COOPER, J., dissents.

JAMES R. COOPER, Judge, dissenting. I respectfully dissent from the majority opinion. The real problem in this case is that the appellant has consistently refused to pay any monies through the registry of the court. He has been wrong to refuse to obey the court's orders in that regard. However, it appears to me that he is being punished for refusing to make the payments in the proper manner, not because he has not made some of the payments required by the divorce decree. The chancellor's entire statement at the close of the contempt hearing sheds light on the matter. He stated:

> I think it's apparent to everybody here that the reason that Judge Mobley put in the decree, back in 1977, that the payments would be made into the registry of the Court is just to prevent our having to spend an entire afternoon hearing a contempt citation. We've been here since 1:00 o'clock, hearing all this stuff that Mr. Buckner has done for his family. Mr. Buckner was not ordered to make a down payment on a house or to buy the beauty salon or to do any of those other things. He was ordered to pay $100.50 per week for child support, and this he's failed to do and he's been in this Court before Judge Mobley, before Judge Stephens, and now before me, because of his failure to do so. I find he made up his mind, way back there, that he wasn't going to do it. He didn't ever intend to do it. He may not do it after today, but he's going to jail because he didn't do it. I find that he owes $13,869 in delinquent child support payments, but he has, for some reason known best to himself, elected not to obey the orders of this Court. Not my order; Judge Mobley's order, back in 1977. I think he spent some of the money that you all have proven this afternoon. I think he spent it in an effort to get Donna Gail Buckner to live with him again, which was his prerogative. God knows, I would have been happy if they'd gone back together. He spent that money on a house and those other things that he did for her, but that's not child support, and that's not what he was ordered to do. I find that he's in

contempt of court in the amount of $13,869 and I'm ordering him to jail until he has purged himself of his contempt. T.224

Also, at page 225 of the transcript, the chancellor stated:

I'm denying any credits at all. I wouldn't have had to listen to this if Mr. Buckner had done what he was ordered to do. I wouldn't have had to spend an entire afternoon listening to all this stuff and viewing all these exhibits, about buying a house, about furniture that he made a down payment on and then eighty-five percent of it had to be repossessed by Kordsmeier Furniture Company. That was a big gift. That sure did help the children a lot.

Those statements indicate to me that the chancellor did not intend to give the appellant credit for any monies contributed to his wife and children, even if he proved he had paid the monies, because he had consistently refused to pay through the registry of the court. In *Bice* v. *Bice*, 6 Ark. App. 208, 639 S.W.2d 534 (1982), the wife filed a petition seeking to hold her ex-husband in contempt for failure to pay child support as ordered by the court. The chancellor refused to hear her petition because she had accepted payments directly from her ex-husband. We reversed, stating that:

The trial court is directed to allow appellant [wife] to prove the amount of unpaid installments not barred by the statute of limitations by any relevant and competent evidence, and to allow appellee to prove any payments made outside the registry of the court by relevant and competent evidence.

In the case at bar the appellant has been cited for contempt on several occasions. He has flagrantly disobeyed the court's order to pay child support through the registry of the court. Such conduct likely constitutes contempt of court, but has little to do with whether he is entitled to credit for payments made outside the registry of the court. It is worth noting that the chancery clerk executed a statement which shows that the appellee signed the child support registry on November 11, 1981, showing that some $4,800 had been paid to her at home, and the clerk's statement indicates that such payment brought the child support current. This tends to support, at least in my view, the appellant's claim

that some of the monies paid after 1981 were accepted by the appellee as child support.

I have no quarrel with the majority's premise that the chancellor could find, on conflicting evidence, that payments made outside the registry of the court were not child support. What I think happened in this case is that the chancellor, understandably irritated with the appellant, refused to weigh the evidence properly. Instead, I think that the court decided that the appellant was not entitled to credit, regardless of the proof, because his payments were not made through the registry of the court. I would remand for a new hearing, and would instruct the chancellor to proceed in this case as the chancellor was instructed to do in *Bice, supra.*